This case arises out of the union's attempt to unilaterally conduct a financial audit of Endo under the guise of an information request for a class action grievance. The union's attempt fails because the Collective Bargaining Agreement, also called the CBA, does not allow for class action grievances. The only grievances allowed under the CBA must be from specific individual employees signed by the employees and submitted to the union within seven days of the date of the alleged violation of the CBA. At this point, it's not an alleged violation. The board has determined that this information was relevant to the bargaining between the union and your client, and that your client's refusal to engage in exchange of documents deemed relevant material constituted an unfair labor practice. Right now, it's not an allegation. What's the standard of review for the board's determination? What's our standard of review? The standard of review for that would be whether substantial evidence supports the board's determination. Yes. And your contention is that it does not. Correct. Yeah. Tell us how. The NLRB erred in determining that the information requested by the union was relevant and necessary. It was not relevant because the union requested information that was not germane or related to carrying out its statutory responsibilities and duties. The union was requesting information related to what it called a grievance, but was not in fact a grievance recognized under the collective bargaining agreement. Grievances have to be submitted by individual employees. This was a document mislabeled as a grievance drafted by union administration and submitted without any supporting signatures from employees and no evidence that it was submitted within the seven-day time limit. So, the union has not provided any, well actually there is no evidence in the record to indicate why the union would have a need to investigate an invalid, unrecognizable, and moot grievance for which no redress or relief may be had. The union has not disputed the fact that there could be no relief obtained because the grievance was more than seven days old. They have provided no explanation how it could get around the requirement that grievances be submitted within seven days of an alleged violation. The document that is mislabeled as a grievance is called Class Grievance MS-12-001. As mentioned previously, it had no signatures from individual employees. There is no indication of when any violations occurred. All it had was a list of sections that Endo Company allegedly violated in the collective bargaining agreement. I'm having difficulty following you. If here the union says they're making a class grievance and you say, well, but there's no class grievance provision in the CBA, the collective bargaining agreement. But as I recall the record, a joint industry committee in another case has found that the CBA can be determined to allow for class grievances. So the claim by the union in this case is not a totally frivolous or a case without any colorable claim. Why isn't that issue about whether class grievance is allowed or not a relevant issue in this labor complaint so that the documents are within the scope of relevant discovery? In that previous joint industry committee action, it was completely unrelated to this one. It was separate. There was that issue of whether class grievances were allowed under the collective bargaining agreement was not at issue there. It was not addressed. It was just simply a question of whether underpayment had been made. And I believe that the president of Endo Company had stated that there may have been underpayments and therefore it was addressed and settled on that matter. But as I understand it here, the union's complaint or gripe is that the employer is paying these people in cash on the weekend and making them use their cars. And those are violations that extend through the whole class of all the painters, not just individuals. It seems to me that the collective bargaining responsibility of the union is to find out whether that's going on so that they can make a grievance of it. Am I totally wrong on that? No. You're correct. The union, you know, has every right to investigate an allegation that Endo... Well, how can they investigate without getting the payroll records and finding out if these people have been paid or not? That would be by following the collective bargaining agreement, which requires an employee to come forward with an allegation that he was made to use a car on a particular day or that he got underpaid or paid in cash on a particular day. So you say that unless those individuals come up within seven days of getting paid cash and tell the union and the union makes a grievance, then they can't bring the action? Oh, yes. Well, yes, within seven days, according to the collective bargaining agreement. So what we have here is just the union submitting a document saying that it believes Endo Company violated a host of collective bargaining agreement provisions, but then not providing the underlying complaints from actual employees that are willing to attest that that is in fact true. This is just the union fishing and suspecting that a violation may have occurred at some time in the last two years and therefore requesting that Endo spend, you know, five or six months to gather all this information and provide it to them, even though it will have no redress and no recourse because it was not submitted within seven days. It turned out, did it not, that some of the information requested by the union didn't exist at all or was no longer existed? It was determined later that, for instance, an organizational chart was not available. But again, these are organizational charts. And didn't the board determine that your client unduly delayed in telling the union that the document or documents didn't exist? Yes. And that that was an unfair labor practice? Correct. That was a determination. However, Endo's position was that... There had been a request for documents. It turned out the documents didn't exist. Your client delayed in telling the union they didn't exist. Where's the problem with that being an unfair labor practice? I think the record shows that Endo employees stated that it would take several months to gather all the information that was being requested. It was a host of information. The union didn't dispute the length of time or that it was a substantial amount of info being requested. And the administrative law judge also made that determination. When Endo went through its records, as it was going through its records, attempting to, you know, in the worst case scenario, have to comply with the information request, it discovered that it did not have the organizational chart. But that was something that took a while to determine because of the voluminous request. And then as the Emeryville Research Center Shell Company versus NLRB, the Ninth Circuit decision of 1971, stated that if the information requested has no relevance to any legitimate union collective bargaining need, a refusal to furnish it could not be an unfair labor practice. Therefore, it turns on the whole issue of whether, you know, a document mislabeled as a class grievance not recognized by the CBA, for which no recourse and relief can be had, whether, you know, requesting information related to that superfluous, unnecessary document and a refusal to comply with that request could be an unfair labor practice. So it turns on the validity of the grievance. Okay. Now to save the time for rebuttal. Yes. I'd like to reserve two minutes for rebuttal, if possible. Thank you. May it please the Court. My name is Jeff Byrd. I'm here on behalf of the National Labor Relations Board. Your Honors, the company's assertion that the union was not entitled to this information is rooted in its mistaken belief that its statutory obligation to furnish information is directly tied to the contractual provisions that have been reached through the collective bargaining process. The reason that this is a case before the National Labor Relations Board, as opposed to one that was brought before an arbitrator, is that it is rooted in the National Labor Relations Act's obligation of the employer in this case to engage in collective bargaining with the chosen representative of its employees. Now a portion of that obligation is to provide information requested by the union that is relevant to the union carrying out its duties as the representative of its employees. Well, but if the union makes a collective bargaining agreement and limits its rights to grievances to those which are individually signed within seven days of the grievance, haven't they given up their statutory right? No, they haven't. There's been no assertion in this case that there's any type of clear or unmistakable waiver of the right to information or to any other rights that Section 85 of the Act provides. What this is, that limits the rights of the parties to adjudicate those type of disputes under the collective bargaining agreement. The employer may say, look, part of our deal here is that I don't want to be bothered with having to give you a bunch of information and running up time with accountants and lawyers and all that. So the only deals we're going to make are, the only grievances we're going to recognize are those which are done by seven days and signed by the party who is making the charge. Deal or no deal, go out on strike or lockout? Well, Your Honor, there, I mean, whether or not in a separate situation a union would agree to a clear and unmistakable waiver of the broad rights to provide information that the Act provides, that would be a different case, but that's not what we have here. We have, we don't even have the allegation or the assertion by the employer that there is a clear and unmistakable waiver of the right to provide information. What we have is a procedural restriction on the ability to bring grievance that does not limit the employee's or the union's right to obtain information on behalf of its employees that's necessary to police the collective bargaining agreement. Would you concede that if the CBA specifically said we are waiving our statutory rights to get information timely, that would make a difference? That it would be, just because you're asking me to concede something, could you repeat the question? Suppose the collective bargaining agreement said, in consideration for entering this collective bargaining agreement, we, the union, give up all our statutory rights to get information other than is strictly relevant under the collective bargaining agreement, including waiving our rights under the case of such and such and such and such, make it as airtight as possible. Would that be okay? If it was as airtight as possible and met the board's clear and unmistakable waiver, for example, if it said that only information that was within seven days of a dispute arising needs to be provided, there are situations in which waiver can take place. There's nothing like that in the agreement here, however. So it's a matter of contract interpretation for us. Does the contract waive the statutory rights of the union? It's not a matter of saying, regardless of the contract you make, the union has these statutory rights as a collective bargaining agent, can't be taken away, the NLRB gives it to them. Well, Your Honor, I don't believe that that's the posture in which this case has been brought about because there's not a claim that there was a – the argument the employer is making is a different one than the question that you're asking. No. They're taking the position very simply of a statutory interpretation or contract interpretation standard which we use all the time, which is expressly a unias. If it's mentioned, seven days, individually signed, that's the only kind of grievance we're involved with. That's a matter – but that is a matter not for this court at this time to make. That is a matter for an arbitrator to decide under the arbitration provisions that exist in the collective bargaining agreement. Now, we haven't had that yet because of – or this dispute has arisen. But the question of the strictures of the grievance procedure in the collective bargaining agreement is for an arbitrator to decide in the first instance and then on very – obviously very limited judicial review for a court to review. But that's not where we are here. The board is here to protect the public right of the employees to obtain information that is necessary to ensure that their contractual rights are being protected. Whether or not the company believes that it has one or more defenses to that, whether it be the seven-day restriction of the grievance procedure or whether or not a class grievance is permissible in the first instance, this is the type of potential defense that would – is certainly not for the board to construe in this case. That is for the arbitrator. What is – for the board, regardless of those type of defenses, as the board – the Supreme Court made clear in the Acme Industrial case, as this court made clear in the Safeway stores that we discuss at length in our brief, those type of defenses remain. But it is still incumbent upon the employer to carry out its obligation under the Act to provide this type of information to – for one of – for many purposes, one of which is to merit or ferret out unmeritorious grievances. Another is to make sure the arbitral process is carried out in an effective manner that removes the potential of a two-tiered structure in which there's a lengthy process over the relevance of information that's sought and only after which do you get to the decision about whether or not there was an actual violation of the collective bargaining agreement. So the board's overall purpose, and the reason that it is the board before you and not the union, is because the board maintains that the provision of relevant information is necessary to avoid the type of back-and-forth jockeying that exists – that has occurred in just this type – this case today. The – it's important to – Well, the back-and-forth jockeying was because the union didn't have the goods on individual people complaining within seven days, so then they said, well, let's have a class grievance and that way we can get all these documents. Yes, but the union is the chosen representative of the employees, the exclusive collective bargaining agent of all employees, whether or not members of the union. They have an obligation under the duty of fair representation, as Your Honor indicated earlier, to investigate these type of allegations that are made. And here we have the type of allegations that are just core to the employer-employee relationship over the payment of wages, the payment of cash, and withholding of certain withholdings, the use of employer vehicles – Your position is the union has a duty to conduct investigations to prove claims not covered by the collective bargaining agreement. Well, it's – no, that's not our position because it's not been made clear that this is not covered. As Your Honor pointed out, for example, the Joint Industrial Committee had previously entertained a class grievance. The fact that this – that the grievance procedure only – Well, whether it's covered or not is a matter for the arbitrator to decide. That's – that is a better way of placing it. Thank you, Your Honor. Now, as far as – So the question is that because it could be covered, they can do a discovery on it? That's correct, Your Honor. I mean, in – What if they were asking for information that couldn't be covered by a grievance as defined by the collective bargaining agreement? Well, we have – there's a dichotomy that the board – Is there sort of an overall policing function that the union can undertake, make sure that the employer is on the level? Well, if – when you say that it couldn't be covered, you know, maybe I should ask for clarification on that. Here we have the type of – we have a request for information that in other contexts the board has found is presumptively relevant and does not require an explanation of the union of why they're seeking the information. Now, that contrasts to information that's not presumptively relevant, of course, that goes a bit beyond maybe information related to non-bargaining employees. Let's say the union suspects, or maybe just unreasonably suspects, that the employer is playing some employees under the table and wants to get records on that. Yes, Your Honor. That's – that would be – I mean, of course, this is for the board, but this would be for the – we're getting into a hypothetical field here, it would be for the board to address in the first instance. But as a general matter, the payment of wages is seen as presumptively relevant. Now, that exists – the union's right to this type of information exists, even absent any type of – Whether there was no – whether it would result in agreements or not. That's right. That's right. The union has that ability in its function, as you said. It's not – let's say it's not prohibited by the collective bargaining agreement that you pay under the table. I mean, it may violate other laws, tax laws, or, you know, it may not be coarsely in other ways. But let's say it doesn't – wouldn't be the cause for a violation of the collective bargaining agreement. I think it is your position that the board could determine that was nevertheless within the scope of what the union could find out. That's right. Well, perhaps for purposes of future bargaining or for future – Just ongoing maintenance to be able to say what's been occurring over the past few years with the payment of wages. So even if ultimately an arbitrator would determine that this grievance was filed out of time or didn't allow a class grievance, that information is still useful to the union carrying out its – Are you saying that if the information is useful for future bargaining purposes, it's an unfair labor practice not to provide it? Well, it's – but I should – I want to clarify. I was using – now, that's an example for future bargaining. But the union, for presumptively relevant information, the union is not required to articulate a reason why it's requesting this information. The union – So your answer would be yes? I suppose the answer would be yes. Maybe I misunderstood your question. Now, there's other type of information. For example, requesting information about the wages of supervisors. This is not generally considered presumptively relevant. And in that type of situation, it does not mean that it's not necessarily relevant, but the union has to articulate the reason. And this is the standard that my opposing counsel has set forth in its brief. It relies on some of these cases. But if it's presumptively relevant, wages, working conditions, presumptively relevant, right? That's right. Well, no, of employees. I – Of employees. And then the employer comes and says, well, they're presumptively relevant except for one little fact, which is we have a written agreement here that says it's not – they're not relevant unless you make these grievances within seven days and get them signed. Well, no, but that's a different situation. I mean, the obligation of the employer to furnish this information exists independently of any pending or proposed grievance over an alleged violation of that. So it doesn't matter that the union is looking into filing a grievance or not. If we're talking about presumptively relevant information, the union has the right to obtain that, even if it is just for maintenance and policing, ongoing policing of – Even if they've given it up by the contract? Even if – Well, that's a different – and as we discussed earlier, no, if there's a clear and unmistakable waiver, but the unmistakable waiver is not – or in – speaking in broad hypothetical terms, is not a procedural defect for invoking the grievance procedure. Now, I'd have to reiterate, of course, that this is all – would all be for the board to address in the first instance these type of hypotheticals. But here, the mere fact that there may be a procedural defect, for example, on timeliness, does not make the information not relevant. It just means that there is a defense in the future. And I would direct the Court's attention to the Acme Industrial case, where, in fact, one of the defenses raised was that the first step of the grievance procedure required the grievances be filed within five days. And the Supreme Court said an arbitrator may ultimately decide that this grievance was untimely, but that does not change the fact that this information is relevant and that the employer is obligated to furnish this type of information. So I think we would, you know, rely heavily on that case, as well as the Safeway Stores case, where this Court stated that it may be very attractive to establish policy whereby the grievability or arbitrability of an issue is to be resolved first, because if it's decided against the union's interest, then the union may no longer need information. However, as this Court stated in Safeway Stores, that's not the policy that the board long ago enacted under its general relevance standard, and it is for the board, as the expert agency charged with enforcing the National Labor Relations Act, to set those policy. And the policy set by the board is this broad discovery type standard. Thank you.  Thank you for your time, Ersh. Thank you. I would like to address what opposing counsel mentioned about needing, supposedly the union needing the information to police the collective bargaining agreement, or that, you know, whether ENDO committed certain violations of the CBA might affect future negotiations or future bargaining. None of that is true. The union admitted that the only reason it seeks the information in question is to specifically investigate the class grievance MS-12-001. It made this statement at trial. It's in Excerpt of Record 1 at page 83. It's locked itself into admitting that the reason, the only reason it wanted this information was to investigate this specific, what it mislabeled, a grievance. So the, it's right to that information turns on the validity of that, of that grievance. But didn't the union say that they needed this information for class grievances? Using that language, class grievances? They said they needed it specifically to investigate that class grievance, not class grievances in general, but that specific one, MS-12-001. Therefore it's not, it would be disingenuous for the union to now argue that the information it's seeking might be relevant to other statutory duties it has or other future negotiations it has with ENDO company. It was specifically to investigate the grievance that it labeled a class grievance, MS-12-001. So the right to information is limited by need to investigate grievances or potential grievances. And that's a distinguishing factor between all the many other cases cited by the union in their briefs. All of those, none of those cases involved a case such as we have here where, you know, what was submitted as a grievance did not qualify as a grievance. How do you get around the ACME case which was cited by your learned friend? Yes, for that ACME case, that too, the information requested in that case could have been used for other grievances. There wasn't this clear determination or this clear argument that the information they're seeking is related to a grievance that can never be brought and can have no relief or redress. It was related to possible future complaints that the union could bring. That's very different from here where we have a situation where they didn't submit the required signatures from employees indicating that they had violations of the CBA, suffered violations of the CBA. And also no indication that there was time barring under the ACME case. What do you make a footnote for in the board's opinion? Respondent did not challenge the relevance of the requested information before the judge, nor does it do so now. We're puzzled by that because our entire brief was dedicated to challenging the relevance by saying that, you know, relevance has to be related to them carrying out a specific duty. Did you challenge that in your brief before us? We did. Where? Where? On page 24 of our brief, we indicated that there were no violations of the CBA. I can't hear you. I'm sorry. Page 24 of our opening brief states that the information requested by the union is not relevant. The union has admitted that the only reason it seeks the information is to investigate class grievance MS-12-001. I understand that you raised the argument of appeal, but the board found that you did not raise it before the board, and you didn't raise it before the ALJ. And I'm wondering, where do you challenge that determination of the board? Where do you say the board is wrong in making that determination? Your Honor, I believe that that was raised below. That was basically our whole argument, the relevance issue. So I believe we did raise it in the brief. But the board says you didn't. Yes, and I think we addressed that. I'm sorry, I don't have the exact page number, but I believe in our opening brief that we stated that it took issue with the board's finding that we did not raise the relevance issue, because our entire case was predicated on that. Well, maybe you can send us a supplemental citation to where the brief was raised on the issue. Okay. Thank you. The case is highly sustained and submitted. We are adjourned.
judges: Kozinski, Hawkins, Bea